AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 2:23-mj-08897
Gray Apple iPhone )
Model: Unknown )
With no identifying numbers or features )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 12/01/2023

*Judge's signature*

City and state: El Centro, California    HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**  Gray Apple iPhone
Model: Unknown
With no identifying numbers or features
Seized from Victoria ROJAS-Serrano
**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-3 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of October 22, 2023, up to and including November 22, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

## AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:** Black Apple iPhone
Model: Unknown
With no identifying numbers or features
Seized from Jesus Angel GUTIERREZ
**(Target Device #1)**

**A-2:** Black Samsung Smartphone
Model: Unknown
IMEI: 35677697088106
Seized from Estefany GUERRERO-Lopez
**(Target Device #2)**

**A-3:** Gray Apple iPhone
Model: Unknown
With no identifying numbers or features
Seized from Victoria ROJAS-Serrano
**(Target Device #3)**

as further described in Attachments A-1 to A-3, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Jesus Angel GUTIERREZ (GUTIERREZ) for transportation of illegal aliens Estefany GUERRERO-Lopez (GUERRERO), Zabdi LOPEZ-Gonzalez (LOPEZ), and Victoria ROJAS-Serrano (ROJAS) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from GUTIERREZ and the Material Witnesses on or about November 21, 2023, incident to the arrest of GUTIERREZ, and the Material Witnesses. The Target Devices are currently

in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8, 18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into

2

the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example,

3

phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On November 21, 2023, Border Patrol Agents - Intelligence (BPA-I) assigned to the El Centro Sector Intelligence Anti-Smuggling Unit Group #2 (ASU) were conducting surveillance in Calexico. At approximately 5:00 p.m., the Calexico Border Patrol Station Remote Video Surveillance System (RVSS) Operator (841) observed four individuals swimming north across the All-American Canal. As 841 broadcasted their observation over the radio, ASU Agents notified 841 that they were in the area conducting surveillance in search of a vehicle they believed would travel to the area and pick up the suspected illegal aliens.

11. ASU Agents strategically parked their unmarked service vehicles closer to the area and kept constant visual while 841 kept constant visual on the four suspected illegal aliens as they continued to walk northwest through the agricultural fields towards Bonds Corner Road. Both 841 and Troy also observed one individual constantly on the cell phone as if they were receiving instructions.

12. At the intersection of Bonds Corner Road and Kumberg Road, Agents observed a sedan, later identified as a 2008 BMW 3 Series bearing California license plates, approach the intersection, slow down and come to complete stop. After the BMW stopped, the four suspected illegal aliens ran to the BMW and got in before the BMW began travelling northbound away from the area.

13. Agents continued surveillance as the BMW travelled to Brawley and drove through various city streets before turning pulling into the back parking lot of a business location on Jones Street in Brawley. As the BMW parked, Troy observed the driver, later identified as GUTIERREZ, exit the BMW, and walk to the building. Troy then observed all four suspected illegal aliens exit the BMW and enter the building. At this time, Troy informed Agents that one individual was standing outside of the building by the door and Agents approached the individual, questioned him to as to his citizenship and the individual was detained.

5

14. Thereafter, Agents were granted permission to enter the building from the owner and, after the owner opened the door, Agents entered what appeared to be an office/apartment with Border Patrol markings and insignia fully visible. ASU Agents identified themselves as Border Patrol Agents and encountered GUTIERREZ attempting to hide behind the front door in a small area to the right of the entryway. GUTIERREZ was questioned as to his citizenship and asked where the other individuals were hiding, and GUTIERREZ admitted that four additional individuals were hiding in the bathroom. SBPA-I M. Clinton opened the bathroom door, identified himself as a Border Patrol Agent to the four suspected illegal aliens, later identified as Silvia Citlalic DE LEON-Simental (DE LEON), Estefany GUERRERO-Lopez (GUERRERO), Victoria ROJAS-Serrano (ROJAS), and Zabdi LOPEZ-Gonzalez (LOPEZ) and questioned them as to their citizenship. Agents observed the four individuals were wet and muddy. DE LEON, GUERRERO, LOPEZ, and ROJAS admitted they were citizens of Mexico and admitted to being in the United States illegally. GUTIERREZ, DE LEON, GUERRERO, LOPEZ, ROJAS, and the additional individual were placed under arrest and were transported to the Calexico Border Patrol Station pending further investigation.

15. At the Border Patrol Station, the individual arrested outside of the office/apartment stated to Agents that GUTIERREZ contacted him today to let him know that he was going to meet him at the location on Jones Street. The individual stated that GUTIERREZ is his nephew and on today's date, GUTIERREZ arrived at the location and walked inside the building. Moments later, GUTIERREZ walked in the building escorting four individuals.

16. Material Witness GUERRERO stated she is a citizen of Mexico and does not have any legal documents allowing her to live, work or remain in the United States legally. GUERRERO stated she traveled to Mexicali, Baja California and made arrangements with an unknown smuggler at a hotel. GUERRERO stated that she did not know how much money she was going to be charged to be illegally smuggled into the United States because her cousins made the arrangements. GUERRERO stated her destination was Los Angeles,

6

California. GUERRERO stated on today's date she crossed into the United States and when they boarded a car, she got in the back seat. GUERRERO stated the male driver drove for about 15 minutes until reaching a room in an unknown city. GUERRERO stated she heard the police knock on the door and were later arrested.

17. Material Witness ROJAS stated she is a citizen of Mexico and does not have any legal documents allowing her to live, work or remain in the United States legally. ROJAS stated she made arrangements with an unknown smuggler through a friend. ROJAS stated she agreed to pay $20,000 USD to be illegally smuggled into the United States. ROJAS stated her destination was Los Angeles, California. ROJAS stated on today's date she crossed into the United States and when they boarded a car that stopped near their location, she got in the back seat. ROJAS stated the male driver drove for about 30 minutes and then told them to get out of the car and they went inside a house. ROJAS stated they went into a bathroom.

18. Material Witness LOPEZ stated he is a citizen of Mexico and does not have any legal documents allowing him to live, work or remain in the United States legally. LOPEZ stated that he traveled to Mexicali, Baja California and his brother made arrangements with an unknown smuggler. LOPEZ stated his destination was Los Angeles, California. LOPEZ stated on today's date he crossed into the United States, and they rafted across a canal along with a guide who returned to Mexico. LOPEZ stated once they crossed the canal they continued towards a road and crossed it. LOPEZ stated the smuggler in Mexico told him not to hang up the phone and to continue walking to his left. LOPEZ stated they walked for about an hour total until reaching a dirt road and he observed a silver car approach and stop near their location and flash his high beams. LOPEZ stated he boarded the front passenger seat and observed a male driver. LOPEZ stated the male driver drove approximately 30 minutes and stopped at a parking lot. LOPEZ stated the male told them to get down and enter a building because everything was good. LOPEZ stated a male person inside the building told them "La Migra is here" and told everyone to get inside the bathroom before they were arrested.

7

19. During a search incident to the arrest of GUTIERREZ and the Material Witnesses, three cellphones were located. BPA-I L. Heipt located one black iPhone (Target Device #1) on GUTIERREZ's person; BPA-I H. Torres located a black Samsung (Target Device #2) on GUERRERO's person; and BPA-I H. Torres also located a gray iPhone (Target Device #3) on ROJAS' person. GUTIERREZ, GUERRERO, and ROJAS all claimed ownership of their respective cellphones and they were seized as evidence.

20. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on October 22, 2023, up to and including November 22, 2023, the day after the arrest of GUTIERREZ and the Material Witnesses.

## METHODOLOGY

21. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions

8

for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//
//
//
//
//
//
//

## CONCLUSION

24. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that GUTIERREZ and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by GUTIERREZ, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 1st day of December, 2023.

_____  12:53 p.m._____
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

10

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**     Black Apple iPhone
Model: Unknown
With no identifying numbers or features
Seized from Jesus Angel GUTIERREZ
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
## PROPERTY TO BE SEARCHED

The following property is to be searched:

<u>A-2:</u>	Black Samsung Smartphone
Model: Unknown
IMEI: 35677697088106
Seized from Estefany GUERRERO-Lopez
**(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**     Gray Apple iPhone
Model: Unknown
With no identifying numbers or features
Seized from Victoria ROJAS-Serrano
**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-3 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of October 22, 2023, up to and including November 22, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.